[Crim. No. 15505. In Bank. July 8, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
LYLE EBER LINDER, Defendant and Appellant.

## Counsel

David S. Folsom, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, William E. James, Assistant Attorney General, and Diana C. Woodward, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**MOSK, J.**—Defendant was convicted of two counts of burglary in the second degree. (Pen. Code, §§ 459, 460.) At the trial he attempted to read into the record a transcript of testimony given by his former wife during a previous trial on the same charges which had ended in a mistrial. The trial court refused to admit the evidence on the ground that not until the day before the second trial was scheduled to begin did defendant deliver to the sheriff a subpoena to be served upon his former wife.

We conclude that the court erred in refusing to admit the testimony upon this ground and that the error was prejudicial and requires reversal of the judgment of conviction.

Defendant and his wife previously were the resident managers of an apartment house in San Diego. In that capacity defendant had been given a master key to the apartment storeroom. He left this employment in August 1968 and moved out of the building without returning the key to the new manager. Approximately 2 a.m. on the night of September 6, 1968, a tenant in the apartment house noticed that the lights around the house, which were normally kept on all night, had been turned off. The tenant saw a man he identified as defendant remove a refrigerator from the storeroom on a hand truck and wheel it toward the apartment parking lot. In the lot was a dark-colored stake-body truck with the legend "University Truck Rental" painted on its side. The truck lights were on, the engine was running, and the tail gate was down. After wheeling the refrigerator away, defendant returned to the storeroom, turned on the lights, and left in the direction of the truck. Defendant, standing on the running board of the truck, rolled the vehicle backwards until it disappeared from the witness' sight. About the same time another tenant saw defendant standing on a truck with wooden slat sides, pushing an appliance around in the bed of the truck. Thereafter defendant walked to a storeroom, turned on the

lights of the apartment house walkway which had previously been turned out, and strolled back to the truck, which was driven away shortly after.

The successor manager visited the storerooms later that day and observed that there was no evidence of forced entry but that a refrigerator, two nightstands and a washer and dryer were missing. He notified the police, who went directly to a house into which defendant was in the process of moving. Through an open garage door the police observed two nightstands similar to those reported missing. When they approached defendant he initially denied removing anything from the apartment house and stated that he had receipts for the nightstands, but later said that he had taken these items.

Defendant was a witness on his own behalf at the trial and denied committing the crimes. He testified as follows: At the time the burglaries were committed he and his wife were at home in bed. Numerous persons had master keys which would open the storeroom, and he had returned his key some time before the burglary was committed. Although he had rented a stake-body truck from University Truck Rentals the truck was obtained on behalf of his employer, a builder, and the key to the truck was retained in an office at a construction job site and was available to a number of people. On the day of the burglary the truck was not in running order and he had telephoned the rental company to send a repairman to fix it. It was not repaired until the afternoon following the burglary.

Defendant explained possession of the nightstands in this manner: He was not present when his furniture was moved from the apartment house. The move was not directly from the apartment house to the home in which the nightstands were found by the police and in the interim between the two moves some of his household goods were stored in a relative's garage. The nightstands were among the stored items and he had not been aware that they were taken from the apartment house until shortly before his arrest. They had been placed in front of the garage of the house into which he was moving because he was planning to return them. He told the officers that he had taken the nightstands inadvertently and planned to take them back. Much of defendant's testimony regarding the truck was corroborated by other witnesses.

During the presentation of his case defendant attempted to read into evidence the testimony given by his wife during the first trial. They had been divorced between the first and second trials, and he contended that he was unable to ascertain her whereabouts. A deputy sheriff testified that on December 16, the day before defendant's second trial was scheduled to commence, he was given a subpoena to serve on Mrs. Linder at a named

address in San Diego. She was not at that address and inquiries directed to the manager and the landlord proved fruitless. Thereupon, the deputy returned the subpoena to his office because the trial was due to begin the next day, the 17th.

Defendant's attorney testified to the efforts he had undertaken to contact the missing witness. The attorney had been retained by defendant to represent him in some post-divorce matter. Mrs. Linder was present at the hearing scheduled to consider the matter, but the hearing was continued. The attorney intended at the time of the continued hearing to serve a subpoena upon Mrs. Linder directing her to appear at defendant's second trial. But she did not appear at that hearing and her own attorney stated that she contacted him only by telephone and he did not know where she could be reached. Defendant's attorney then telephoned Mrs. Linder's sister in San Diego, but she denied knowing anything of Mrs. Linder's whereabouts. He also telephoned her mother, who told him that Mrs. Linder had a job which required her to travel and she had last heard from her daughter from either Arizona or New Mexico. The attorney also attempted to have "a process server, a detective somebody," try to locate the witness, to no avail. Thereafter, he sent the sheriff's office a copy of the subpoena with her last known address. He was under the impression that the sheriff's office was continuing in its attempt to serve the witness during the trial (the subpoena was received by the sheriff on December 16 and the attorney's testimony was not given until one week later, December 23), but he had just learned from the testimony of the deputy sheriff that morning that no efforts had been made to serve the subpoena after the lone abortive attempt on December 16.

The trial court thereupon stated, "That is absolutely inadequate. The papers should have been in the Sheriff's office at least two weeks, ten days prior to the filing. He said he couldn't find her on the 16th, and if he would have found her on the 17th she wouldn't have had to show up because the subpoena directed her to come at 9 o'clock. So I don't think sufficient efforts have been made to look into it."

■ Testimony given at a prior criminal trial may be introduced in a later proceeding if, inter alia, the declarant is unavailable as a witness. (Evid. Code, § 1291.) Unavailability may be established by a showing that the witness is absent and the proponent of his statement has exercised reasonable diligence but has been unable to secure his attendance by the court's process. (Evid. Code, § 240, subd. (a)(5).)

What constitutes due diligence to secure the presence of a witness depends upon the facts of the individual case. (See *People* v. *Cavazos* (1944) 25 Cal.2d 198, 200-201 [153 P.2d 177].) The term is incapable of a

mechanical definition. It has been said that the word "diligence" connotes persevering application, untiring efforts in good earnest, efforts of a substantial character. (*People* v. *Horn* (1964) 225 Cal.App.2d 1, 5 [36 Cal. Rptr. 898].) The totality of efforts of the proponent to achieve presence of the witness must be considered by the court. Prior decisions have taken into consideration not only the character of the proponent's affirmative efforts but such matters as whether he reasonably believed prior to trial that the witness would appear willingly and therefore did not subpoena him when he was available (*People* v. *Banks* (1966) 242 Cal.App.2d 373, 377 [51 Cal.Rptr. 398]), whether the search was timely begun, and whether the witness would have been produced if reasonable diligence had been exercised (*People* v. *Benjamin* (1970) 3 Cal.App.3d 687, 696-697 [83 Cal. Rptr. 764]).

It would serve little purpose to discuss the myriad factors which induced one court and not another to make a finding that diligence had been exercised. However, we have discovered no persuasive authority permitting the trial court to confine its consideration exclusively to whether a subpoena was delivered in a timely fashion to the sheriff for service upon the missing witness. ■ The court's peremptory exclusion of the testimony on the ground that defendant's delivery of the subpoena occurred only the day before the trial, without a consideration of the cumulative efforts made by his attorney to locate the witness, was clearly erroneous.[1]

We have no doubt that the error was prejudicial. Defendant's case rested largely upon his assertion of an alibi, and the only witness who could have corroborated his testimony in this regard was Mrs. Linder. Defendant states that she in fact gave such testimony at the first trial, which ended in a mistrial.[2] While it is true that the prosecution's case was independently

---

[1]Indeed, the delivery of the subpoena to the sheriff could have little practical significance in the present context. Defendant's attorney may have attempted service in this manner for the purpose of providing an independent witness to the fact that she was not at her last known address or to satisfy the provision of section 240, subdivision (a) (5), of the Evidence Code that the proponent of an absent witness' statement must show that he exercised reasonable diligence but was unable to procure the witness' attendance "by the court's process." It has been aptly said that "no good could be accomplished by requiring that an officer make a pretense of looking for the witness in a number of places where he could not reasonably be expected to be found . . . ." (*People* v. *O'Shaughnessy* (1933) 135 Cal.App. 104, 110 [26 P.2d 847].) It seems clear to us that even though the sheriff was asked to serve Mrs. Linder only the day before the scheduled trial, this pro forma effort, directed to an address where she no longer resided, could play only a minor role in the overall assessment of what constitutes reasonable diligence.

[2]The People complain that the record fails affirmatively to demonstrate that Mrs. Linder corroborated her husband's alibi at the first trial, although they do not contend that she did not actually do so. Since the prosecution opposed the admission of the evidence and does not deny defendant's claim of corroboration the

convincing, we conclude it is reasonably probable that a result more favorable to defendant would have been reached if the only evidence corroborative of his alibi had not been erroneously excluded. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

In view of our conclusion that the judgment must be reversed because the trial court applied an improper standard in determining whether Mrs. Linder's prior testimony should be admitted, we need not consider whether the showing made by defendant established as a matter of law that he had exercised reasonable diligence to secure her attendance.

█ Defendant makes one contention which merits attention since it relates to a matter which might arise on retrial. He maintains there is a wide disparity between the ability of the prosecution "with unlimited funds, an entire police force and Sheriff's office, plus his own investigators at his disposal, to locate and subpoena a witness and that of a defendant who must rely primarily on his attorney who usually cannot expect any compensation whatever for his efforts." The People concede, with commendable objectivity, that the trial court may take this element, among others, into consideration in assessing whether a defendant has exercised reasonable diligence to secure the attendance of an absent witness.[3] We agree.

The judgment is reversed.

Wright, C. J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

**McCOMB, J.**—I dissent. I would affirm the judgment for the reasons

---

People cannot now claim that Mrs. Linder's testimony on defendant's behalf at the first trial did not in fact corroborate his alibi. Had the testimony not done so, or had it been neutral in substance, the prosecution would have no purpose in objecting to the admission of the testimony.

[3]We pause to note that with very few exceptions (e.g., *People* v. *McFarlane* (1903) 138 Cal. 481 [71 P. 568, 72 P. 48]; *People* v. *Barbera* (1926) 78 Cal.App. 277 [248 P.304]) the cases involving the introduction of testimony given at a prior trial relate to attempts by the prosecution to introduce prior testimony given against a defendant. In the latter situation the court must consider whether the defendant's right to confront witnesses against him is violated by the receipt of the prior testimony. (*Barber* v. *Page* (1968) 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318].) We are presented here with the converse situation, i.e., a defendant is attempting to introduce prior testimony of an absent witness given in his favor. We need not determine here if this distinction has any significance with regard to the showing of reasonable diligence required of a defendant.

expressed in the by The Court opinion of the Court of Appeal, Fourth Appellate District, Division One (*People* v. *Linder,* 4 Crim. No. 3994, filed January 13, 1971, certified for nonpublication).