WILLIAM THOMAS BROOKS, JR. *v.*
STATE OF MARYLAND

[No. 647, September Term, 1976.]

*Decided April 7, 1977.*

462

The cause was argued before MOYLAN, DAVIDSON and LISS, JJ.

*Bradford C. Peabody, Assigned Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Daniel Cassidy, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

William Thomas Brooks, Jr., appellant, was convicted by a jury in the Circuit Court for Prince George's County of robbery with a deadly weapon, carrying a handgun and use of a handgun in the commission of a crime of violence. Sentences were imposed on each of these convictions, and it is from these judgments that this appeal was taken. It is not

necessary for the purposes of this appeal to relate the facts concerning the armed robbery which occurred on February 16, 1975, at a restaurant in Langley Park, Maryland.

The appellant offers five grounds for reversal of the judgments against him; we find none to be meritorious and shall affirm. He contends first that the trial court erred in not granting his motion to dismiss the indictment against him on the ground that he was denied a speedy trial. He relies on the criteria set out in *Barker v. Wingo*, 407 U. S. 514, 92 S. Ct. 2182, 33 L.Ed.2d 101 (1972), as the balancing test to be applied in determining this issue. *Erbe v. State*, 276 Md. 541, 350 A. 2d 640 (1976), is cited as authority for the proposition that the "triggering mechanism" of Barker is activated prima facie if the lapse between arrest and trial is longer than one year. The total time involved in this case is between March 31, 1975 and May 5, 1976. This delay of 14 months is sufficient to trigger scrutiny and require us to examine the reasons for the delay, the possibility of prejudice to the appellant, and the effect of the assertion or lack of assertion below of the right to a speedy trial. See *Jones v. State*, 279 Md. 1, 367 A. 2d 1 (1976).

Our task is simplified by appellant's concession in his brief that only a total of six months of the delay is even allegedly attributable to the State. The remaining eight months are presumably assessed as with that period allowable for the orderly administration of justice and/or appellant's own dilatoriness, and cannot be charged against the State. See *Jones v. State, supra; Lee v. State,* 32 Md. App. 671, 363 A. 2d 542 (1976); *Ward v. State,* 30 Md. App. 113, 351 A..2d 452 (1976).

The record shows that appellant was incarcerated in Virginia during the six months at issue, and that the Maryland prosecutor was unable to secure the cooperation of the Virginia authorities in producing appellant for trial. On at least one occasion a writ requiring appellant's presence in Maryland for the purpose of trial was returned with the notation "Writ not honored by Virginia." A careful consideration of the record convinces us that the State acted in good faith in attempting to have appellant brought to

Maryland. As we held in *Isaacs v. State,* 31 Md. App. 604, 358 A. 2d 273 (1976), *cert. den.,* 278 Md. 724 (1976); *Davidson v. State,* 18 Md. App. 61, 305 A. 2d 474 (1973); *cert. den.,* 269 Md. 757 (1973), the State cannot be charged with that portion of the delay resulting from appellant's criminal acts in another state or his wilful absence from Maryland. Accordingly, since no portion of the delay is "attributable" to the State, we need not examine prejudice and assertion of the right to speedy trial, and we conclude that the trial court properly denied appellant's motion to dismiss for lack of a speedy trial.

The appellant next asserts that the trial court erred in allowing the State to introduce evidence that the appellant, after having already made an exculpatory statement to the police, refused to answer other questions posed by them. The State called as one of its witnesses a Detective John Lew who testified as to certain written and oral statements made by the appellant in the course of a custodial interrogation. It was conceded that the appellant had been advised of his constitutional rights and had signed a "waiver form." When the State offered the statements into evidence, trial counsel objected on the grounds that certain portions were "not relative to this case." At a bench discussion, it was ascertained by the court that the appellant's counsel was disturbed by a statement made by his client to Detective Lew in which he disavowed having committed this crime with a black accomplice because he was prejudiced toward blacks. Counsel contended that the reading of this statement to the jury would be "too inflammatory to help." The trial court overruled the objection saying:

> "I think it's relevant for the reason that there are allegations made that there are accomplices in the case and of the black race, and I am sure that's what he was questioning in regard to. Did he commit a robbery with another white and black male, and he, of course answers he's prejudiced against blacks and wouldn't commit any crime with a black. I think it's relevant. Admit the statement in total."

1 Wharton, *Criminal Evidence* § 151 (13th ed. 1972), defines relevant evidence:

> "Any evidence which is helpful in getting at the truth of a material issue is relevant, even though it is only a link in the chain of facts which must be proved to make the proposition at issue appear more or less probable. . . . Evidence will be excluded as irrelevant, then, when the fact which it would prove or disprove is not material to the prosecution or defense."

Applying that test, we believe that the trial court was correct in admitting the statement voluntarily made by the accused to the police. Nor do we perceive any prejudice arising from the submission to the jury of one of the reasons given by appellant in attempting to exculpate himself from the crime with which he was charged. *See Brown v. State*, 29 Md. App. 1, 349 A. 2d 359 (1975). After the exculpatory statement had been read to the jury a colloquy ensued between the State's Attorney, the trial court and the detective. The appellant contends that this colloquy amounted to an improper infringement of his constitutional right to remain silent in response to police interrogation. The colloquy was as follows:

> "STATE'S ATTORNEY: Thank you. During the period of time that you questioned the defendant in regard to this crime, did he ever tell you where he was on this particular night?
>
> DETECTIVE LEW: No, he didn't.
>
> STATE'S ATTORNEY: Did you ask him where he was on this particular night?
>
> DETECTIVE LEW: Yes.
>
> STATE'S ATTORNEY: Did you ever give him the name of any people he was allegedly with?
>
> DETECTIVE LEW: No, I didn't.
>
> STATE'S ATTORNEY: Did the defendant make any further statement at this time?
>
> DETECTIVE LEW: No, sir.

THE COURT: Did you ask him where he was that night?

THE WITNESS: Yes.

THE COURT: What's your answer.

THE WITNESS: 'Witness did not reply.' "

Appeal counsel [1] has very diligently briefed both the Federal and State cases which hold that an accused's initial waiver of his right to remain silent does not preclude a later assertion of that right. He urges that we ought to apply the principles laid down in *Younie v. State*, 272 Md. 233, 244, 322 A. 2d 211, 217 (1974), in which our Court of Appeals held that, "Silence in the context of a custodial inquisition is presumed to be an exercise of the privilege against self incrimination . . . ." He contends that permitting the submission to the jury of the fact that the appellant remained silent in response to certain questions asked by the detective was prejudicial error.

There is, however, a fatal flaw in the appellant's argument. A careful reading of the trial transcript discloses that no objection was made to the questions asked the detective by the State's Attorney and the trial judge during the colloquy; that no motion was made to strike the testimony, nor was there any constitutional objection raised to the questions asked and the answers given. It is apparent that the appellant's counsel — with the benefit of the "instant replay" of the trial transcript — elected to raise the issue for the first time in the appeal before us. We have said, in too many cases to enumerate here, that we shall adhere to Maryland Rule 1085 and will not consider on appeal an issue not raised and decided in the trial court, nor will the fact that the question raised is a constitutional one defer us from the application of that rule. *Smith v. State*, 16 Md. App. 317, 295 A. 2d 802 (1972). We therefore decline to rule on this issue.

As his third ground for reversal, the appellant maintains that the trial court erred in excluding from evidence the

---

1. Appeal counsel was other than trial counsel.

partial transcript of the appellant's trial for another armed robbery alleged to have been committed by the appellant in nearby Virginia. The testimony which the appellant attempted to introduce was that of the owner of a restaurant in Arlington, Virginia, who allegedly stated that the armed robbery occurred on the same date and approximately the same time as the robbery in the case we here consider. The appellant suggests that the testimony would have substantiated his alibi that he was in Virginia at the time that the Maryland robbery was committed and would have explained his silence during his custodial interrogation. The appellant urges as authority for his position *Contee v. State*, 229 Md. 486, 184 A. 2d 823 (1962), *cert. denied*, 374 U. S. 841 (1963), and *Britton v. State*, 2 Md. App. 285, 234 A. 2d 274 (1967).

The appellant's ingenious effort to stretch these cases to fit his last does not withstand close scrutiny. Chief Judge Gilbert of this Court in the recent case of *Thomas v. State*, 32 Md. App. 465, 361 A. 2d 138 (1976), discussed the general rule as to the admission of testimony given at a prior trial by a witness who later became incompetent. He there said at pp. 471-72 quoting from *Contee*:

> "It is well settled that testimony taken at a former trial may be admitted, if it be shown that the witness is dead, insane, or beyond the jurisdiction of the court, or on diligent inquiry cannot be located, or that some other circumstance exists which shows that the witness who gave the testimony at the former trial cannot be procured as a witness at the second trial. ... The writers and authorities all agree that where there was an opportunity to cross-examine the witness in the former trial, there is no violation of the right to be confronted with the witnesses against the accused, under Art. 21 of the Maryland Declaration of Rights or under the Due Process clause of the Fourteenth Amendment to the Federal Constitution. Since there is no constitutional right

involved, there has been a discernible tendency, we think, to liberalize the rule, which was first applied *ex necessitate* in the case of death." (citations omitted)

The mote in appellant's argument, however, is found in the case of *Barber v. Page*, 390 U. S. 719, 88 S. Ct. 1318, 20 L.Ed.2d 255 (1968). In that case Barber and Woods were jointly charged with armed robbery. During the preliminary hearing Woods waived his privilege against self-incrimination and testified incriminating Barber. When Barber was tried in Oklahoma several months later, Woods was in a federal prison in Texas. Oklahoma made no effort to obtain Woods' presence at trial, but introduced, over petitioner's objection, the transcript of Woods' testimony at the preliminary hearing on the basis that he was out of the State and unavailable to testify. Barber was convicted; the United States Supreme Court reversed and enumerated the test for determining the admissibility of the previous testimony in such circumstances at pp. 723-25, 88 S. Ct. at 1321-22, 20 L.Ed.2d at 259-60:

"We start with the fact that the State made absolutely no effort to obtain the presence of Woods at trial other than to ascertain that he was in a federal prison outside Oklahoma. It must be acknowledged that various courts and commentators have heretofore assumed that the mere absence of a witness from the jurisdiction was sufficient ground for dispensing with confrontation on the theory that 'it is impossible to compel his attendance, because the process of the trial Court is of no force without the jurisdiction, and the party desiring his testimony is therefore helpless.' 5 Wigmore, Evidence § 1404 (3d ed. 1940).

Whatever may have been the accuracy of that theory at one time, it is clear that at the present time increased cooperation between the States themselves and between the States and the Federal Government has largely deprived it of any continuing validity in the criminal law. . . .

> ... In short, a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." (footnotes omitted)

*See also Berger v. California,* 393 U. S. 314, 89 S. Ct. 540, 21 L.Ed.2d 508 (1969); *Dutton v. Evans,* 400 U. S. 74, 91 S. Ct. 210, 27 L.Ed.2d 213 (1970); *Mancusi v. Stubbs,* 408 U. S. 204, 92 S. Ct. 2308, 33 L.Ed.2d 293 (1972) (dissenting opinion); *State v. Collins,* 265 Md. 70, 288 A. 2d 163 (1972).

In this case we deal not with an assertion of a defendant's Sixth and Fourteenth Amendment right of confrontation in the face of the State's attempt to introduce prior testimony; rather, we deal with the parallel situation of a hearsay objection by the State in the face of the defendant's attempt to introduce prior testimony as a hearsay exception. Under this exception the hearsay testimony is admissible only if a proper foundation has been laid including a showing that the declarant is unavailable. Wharton, *Criminal Evidence* § 650 (Torcia ed. 1973); McCormick, *Evidence* § 253 (2d ed. 1972). The burden is on the person offering the prior recorded testimony to show that a good faith effort has been made to produce the witness in court so that the witness may be subject to cross-examination under oath, and so that the trier of the fact may observe the demeanor of the witness while giving his testimony.

The federal government and practically all states have adopted procedures for the securing of the attendance of material witnesses from another state to testify in criminal prosecutions. Both Maryland and Virginia have adopted the "Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings." [2]

In *Britton, supra,* and *Reckard v. State,* 2 Md. App. 312, 234 A. 2d 630 (1967), this Court held that the State need not resort to the provisions of the Uniform Act in order to

---

2. Maryland Code (1974, 1976 Cum. Supp.), Courts and Judicial Proceedings Art. § 9-301 *et seq.;* Virginia Code (1950, 1976 Supp.) § 19.2-272 *et seq.*

invoke the rule that testimony given at a former trial may be admitted if it is shown that the witness is beyond the boundaries of the State or, on diligent inquiry, cannot be located. In view of the Supreme Court's subsequent decision in *Barber, supra,* were the identical issue raised here now, we would reach the opposite result. Analogously, we now hold that a defendant must show that he used the provisions of the Act but was nonetheless unable to secure the attendance of an out-of-state witness before such a witness' testimony, given at a former trial, may be admitted.

The defendant failed completely in his duty to lay the foundation required before the trial court could consider the admissibility of the prior testimony. There is no showing that the witness was in fact unavailable and no evidence of a good faith effort to secure the attendance of the witness. Under these circumstances, the trial court was correct in sustaining the objection to the admissibility of the transcript.

Since the unavailability of the witness has not been sufficiently established, we do not reach the questions of whether there was sufficient evidence of identity of issues and parties and sufficient opportunity for cross-examination to qualify the evidence under the prior recorded testimony exception to the hearsay evidence rule. *See* McCormick, *supra,* §§ 255-57; 5 J. Wigmore, *Evidence* §§ 1386-88, 1396, 1404 (3rd ed. 1940).

The appellant asserts as his fourth ground for reversal the trial court's error in permitting the prosecutor to question the appellant concerning the absence of a witness who was allegedly an accomplice of the accused and who could substantiate the appellant's alibi. The appellant, who testified in his own behalf in this case, had contended that he and the accomplice, one McCurry, had been engaged in the commission of another robbery in Virginia at the time the robbery in this case occurred. Over objection, the State's Attorney was permitted to ask the appellant, "Did you try to get him here today to testify for you?" The appellant answered in the negative.

The appellant argues that the controlling law is found in 1 Wharton, *Criminal Evidence* § 148 (13th ed. 1972). Our reading of the legal principles there enunciated convinces us that the cited sections of Wharton deal with the instructions that may be given to a jury as to the inferences which may be drawn from the failure of a party to call a witness who could testify as to material facts. In this case no such instruction was requested, nor was such an instruction given to the jury. No such inference was called to the attention of the jury in argument. We believe that the question was permissible cross-examination utilized to attack the credibility of the alleged alibi of the appellant. We find no merit in the asserted ground for reversal.

Finally, the appellant urges that his conviction for unlawfully carrying a handgun merged into the more serious offense of use of a handgun in a crime of violence. Again, no such issue was raised in the trial below. The issue is therefore not properly before us on appeal. Maryland Rule 1085.

*Judgments affirmed.*
*Costs to be paid by appellant.*