625 So.2d 1135 (1993)
Ex parte Curtis WRIGHT, Jr.
(Re State v. Curtis Wright, Jr.)
1920121.
Supreme Court of Alabama.
May 21, 1993.
James E. Kimbrough, Jr., Mobile, for petitioner.
James H. Evans, Atty. Gen., and Robin Blevins, Asst. Atty. Gen., for respondent.
HORNSBY, Chief Justice.
We have granted Curtis Wright's petition for certiorari review of a judgment of the Court of Criminal Appeals affirming Wright's conviction of assault in the first degree for the shooting of Brian Facemire. We reverse and remand.
On July 4, 1990, shortly after a fireworks display at the Mobile Festival Center, Mobile, Alabama, Russell Paul Smith and Jarrod Lovelace were sitting in Smith's automobile in the Festival Center parking lot when two young men, later identified as Curtis Wright and E.M., ran by the car. Apparently, both young men put their hands on Smith's car and "pushed off" from the corner of it as they ran by. At the time, Smith, who did not know either of the two young men, was sitting in the passenger's seat of his car with the door open. Smith testified that he hollered to the young men: "Don't run across my car like that." Then, he said, the second young man, who was wearing solid black clothing, stopped, walked backed to Smith's car, and asked Smith if he was "trying to start something." Smith said that while he was repeating to that young man what he had said, the other young man, who was *1136 wearing green and black clothing, walked back to the car. Smith said the young man wearing green and black clothing hit him in the head and kicked him; then, he said, the young man wearing solid black clothing pulled a gun and held it in his face. At that point, Brian Facemire, who had witnessed these events from his car, which was a few feet away, stepped out of his car, began walking toward Smith's car, and hollered at the young men, saying: "Just go on before the paddy wagon comes." Then, one young man turned and shot Facemire in the chest. Facemire survived the shooting.
A Mobile County grand jury indicted Wright on a charge of assault in the first degree for the shooting of Facemire.[1] On May 30, 1991, his case was presented to a jury. Because the jury was unable to reach a verdict, the court declared a mistrial and scheduled a second trial for October 28, 1991. In that second trial, the jury found Wright guilty and the court sentenced him to 10 years in a state penitentiary. The Court of Criminal Appeals, by an unpublished memorandum, affirmed Wright's conviction. 617 So.2d 713.
In both of Wright's trials, his defense to the assault charge was that it was E.M.not Wrightwho had shot Facemire. During Wright's first trial, Marcus Seals, a defense witness, testified that on July 4, 1990, the day of the shooting, Seals, Wright, E.M., and Ari Gordon rode to the Festival Center together. Seals testified that earlier that day he had seen E.M. with a .25 caliber chrome-colored gun. The bullet that injured Facemire came from a .25 caliber gun. Seals also stated that he did not witness the shooting, but that E.M. later told him that E.M. had shot Facemire. Seals's testimony was the only testimony directly supporting Wright's defense. Seals was not present to testify at the second trial.
At the second trial, Wright requested that Seals's testimony given at the first trial be read to the jury. The trial court refused this request; Wright argues that the trial court thereby erred.
Former testimony (sometime called "prior testimony") is hearsay evidence, but it is admissible when the personal attendance of a witness is not procurable and when the former testimony meets certain criteria. See Charles W. Gamble, McElroy's Alabama Evidence § 245.07(1) (4th ed. 1991), and cases cited therein. In this case, the trial court ruled that Wright's attorney failed to prove that he could not produce Seals's personal attendance at the second trial. See id. at § 245.07(8). Specifically, it said Wright's attorney did not establish that he had exercised due diligence to secure Seals's attendance at trial. See Nolen v. State, 469 So.2d 1326, 1328 (Ala.Crim.App.1985).[2] However, the record indicates that the predicate testimony offered to prove Seals's unavailability *1137 may have been sufficient to establish that Seals was permanently or indefinitely absent from the state. See Williams v. Calloway, 281 Ala. 249, 251-52, 201 So.2d 506, 508 (1967).
The question of sufficiency of the proof offered to establish the predicate of unavailability of a witness is addressed to the sound discretion of the trial judge. See Nolen, 469 So.2d at 1289. This Court will not disturb rulings in matters resting in the discretion of the trial court unless that court has clearly abused its discretion. Ex parte Guerdon Industries, Inc., 373 So.2d 322 (Ala. 1979). Further, this Court has stated that to be entitled to a reversal of a judgment for an abuse of discretion, the party claiming abuse must establish that it was prejudiced by the alleged abuse. See Valley Properties, Inc. v. Strahan, 565 So.2d 571, 583 (Ala. 1990).
Wright argues that the trial court abused its discretion by refusing to allow proffered predicate testimony regarding Seals's whereabouts. To lay a predicate for the admission of Seals's former testimony, Wright established that, at the time of the first trial, Seals was serving time in jail for reckless endangerment and for carrying a pistol without a permit. Before the second trial, the Mobile County sheriff attempted to serve a subpoena on Seals at his last known address, but returned the subpoena with the notation "moved, address unknown." Wright testified that he had heard that Seals was in New York, but that he was not really sure where Seals was. Further, Wright's attorney asked the court to hear testimony from Kayshawn Jones, a witness for the prosecution in both trials; Wright's attorney says Jones would have testified that Seals was in North Carolina. However, the court refused to allow Jones's testimony regarding her knowledge of Seals's location.
Despite the fact that Jones's testimony would have been outside the hearing of the jury, the court ruled that, because Jones had been seated in the courtroom since she had testified for the prosecution earlier in the trial, to allow her testimony would violate Rule 9.3(a), Ala.R.Crim.P. That rule provides:
"Prior to or during any proceeding, the court, on its own motion or at the request of any party, may exclude witnesses from the courtroom and direct them not to communicate with each other, or with anyone other than the attorneys in the case, concerning any testimony until all witnesses have been released by the court."
The trial court had invoked Rule 9.3(a) on its own motion. So far as the record indicates, the parties' only notice that the court had invoked this rule was the fact that it had instructed the witnesses to leave the courtroom. However, the record indicates no instruction to the witnesses based on Rule 9.3(a); it contains only the court's statement, made when it refused to hear Jones's testimony, that the court had given such an instruction initially.
Without hearing Jones's testimony, the trial court could not have determined whether her testimony would have established either that Seals was permanently or indefinitely absent from the state, or that Wright's attorney used due diligence in attempting to secure Seals's presence at trial.[3] Thus, we conclude that by refusing to consider Jones's testimony, the trial court abused its discretion. Further, when we consider the substance of Seals's testimony in the first trial, compared with the evidence presented in the second trial, and the fact that in the first trial the jury could not reach a decision as to Wright's guilt, we must further conclude that the trial court's error prejudiced Wright's defense. Seals's testimony was the only evidence that would have corroborated Wright's testimony.
The case against Wright centered on the physical differences between Wright and E.M. on July 4, 1990. The record shows that on that date Wright was wearing black shorts and a black shirt and that E.M. was *1138 wearing a dark green shirt and cut-off blue jeans. The record shows, further, that on that date Wright was taller and larger than E.M. Facemire testified that the person who shot him was wearing dark clothing. Facemire stated: "That's the only thing I can remember because it was dark that night. If [the clothing had] been of a lighter color, I could have picked it out. But I knew it had to be within a black or dark blue or somewhere around in there." Further, Smith testified that the person who shot Facemire was wearing solid black clothing. However, Smith also testified that the person who hit him, the one he said was wearing green and black clothing, was taller and bigger that the person wearing solid black clothing. In contrast, Lovelace testified that it was the taller of the two who shot Facemire, but that he did not remember what either of the two young men was wearing. Likewise, David Rowlee, another person who witnessed the shooting from a nearby car, testified that it was the taller of the two young men who shot Facemire; however, Rowlee testified that he never saw the gun.
Because the trial court abused its discretion in refusing to consider Jones's testimony and because that abuse of discretion prejudiced Wright's defense, Wright's conviction is due to be reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
MADDOX, J., dissents.
MADDOX, Justice (dissenting).
The majority holds that the learned trial judge abused his discretion in refusing to permit the defendant to use the testimony of a witness given at a prior trial because the defendant had failed to show to the satisfaction of the trial judge that the witness was unavailable.
I have read the original record of the colloquy between the trial judge and counsel for the defendant concerning the whereabouts of the witness, and I am convinced that the trial judge did not abuse his discretion in refusing to permit the prior testimony. If the absent witness's testimony was as critical to the defendant's case as he now claims, he should have taken more care to secure it; the record shows that he was not diligent in attempting to secure the witness's presence at his second trial. Clearly, the trial judge did not abuse his discretion in refusing to permit the hearsay evidence under all the facts and circumstances shown by the record.
NOTES
[1] When the shooting occurred, Wright was 17 years old and E.M. was 16 years old. Both Wright and E.M. were arrested, transported to the Mobile County Youth Center, and charged with assault in the first degree. E.M. was tried as a juvenile and was placed in the custody of the Alabama Department of Youth Services. Wright was transferred to the Mobile County Circuit Court to stand trial as an adult.
[2] No Alabama case addresses the steps a criminal defendant must take to establish "due diligence" in seeking the presence of an unavailable witness. Alabama's recent criminal cases addressing the requirement of due diligence relate only to the prosecutor's attempts to introduce former testimony of an unavailable witness. We find only two jurisdictions that have discussed the burden on a criminal defendant seeking the presence of an unavailable witness. See People v. Linder, 5 Cal.3d 342, 96 Cal.Rptr. 26, 486 P.2d 1226 (1971) (trial court should have considered the totality of the defendant's efforts to secure the presence of his witness at trial; it erred by excluding that witness's former testimony solely because the defendant made no attempt to subpoena the witness until the day before trial); Brooks v. State, 35 Md.App. 461, 371 A.2d 674, 678 (1977) (trial court did not err in refusing to allow the former testimony of a defense witness who was incarcerated in another state, because the defendant had failed to show that he had attempted to obtain that witness's presence through state procedures established for that purpose). Those cases point out that when the prosecution seeks to introduce former testimony of an unavailable witness against a criminal defendant, its burden in seeking the witness's presence is enhanced by the defendant's Sixth Amendment right of confrontation. See also Anderson v. State, 362 So.2d 1296, 1301 (Ala. Crim.App. 1978). In contrast, a criminal defendant seeking to introduce former testimony need address only hearsay concerns.
[3] Because we chose to dispose of this case on the issue of predicate testimony, we need not consider here the obvious problem that would arise in a case like this where a prosecution witness violates the rule and then later the defendant is barred from offering testimony of that witness to the jury because of the violation. It may be unfair to penalize the defendant because the prosecution's witness has violated the rule.