Filed 4/11/25  P. v. Duncan CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C099572 |
| v. | (Super. Ct. No. 22FE017940) |
| DERRICK DUNCAN, | |
| Defendant and Appellant. | |

A jury convicted defendant Derrick Duncan of assault with a deadly weapon and found true an allegation that he personally inflicted great bodily injury.  The trial court sentenced him to nine years in state prison.

Defendant now contends his constitutional right to confront prosecution witnesses was violated by the admission at trial of the absent victim's preliminary hearing

1

testimony, because the People did not show they had used reasonable or due diligence to secure the victim's presence at trial. Finding no constitutional violation, we will affirm the judgment.

BACKGROUND

The victim testified at the preliminary hearing on February 7, 2023. He said he was without permanent housing and had been living in downtown Sacramento near X Street. Codefendant Develle Oneal Thomas was known to him.[1] Thomas was the victim's drug dealer and lived in a tent on X Street.

On the day of the assault, the victim met with Thomas and defendant. Thomas argued with the victim and slapped his face. After the argument, the victim sent a woman to obtain fentanyl from Thomas. When Thomas learned that the woman had been sent by the victim, he went with defendant to talk with the victim. During a fight between the three men, defendant and Thomas hit the victim on the head, rendering him unconscious. While he was unconscious, the victim was stabbed. The victim told responding officers that Thomas had stabbed him.

On cross-examination, the victim admitted he had been hit on his sides, he had not seen a knife, but when he returned to consciousness he had stab wounds where defendant and Thomas had hit him.

At the conclusion of the victim's preliminary hearing testimony, the trial court ordered the victim to return to court on April 3, 2023, to testify at trial. The victim did not appear on April 3, 2023. The trial was continued to May 23, 2023, but again the victim did not appear. Following a hearing described in the discussion portion of this opinion, the trial court allowed the prosecution to read the victim's preliminary hearing testimony to the jury at trial.

---

[1] The victim knew Thomas as "Baca Stunna" and referred to him that way. We will use the name Thomas for clarity.

2

The following evidence was also presented at trial. When police officers responded to the scene, they found the victim bleeding with two stab wounds in his back. The victim initially said Thomas had stabbed him, then said he did not know who hurt him, and later said Thomas and defendant assaulted him, although he was not sure if it was defendant or both men that stabbed him.

Another witness, S.C., testified that once the victim was on the ground, defendant punched him and kicked him in the face. Later, defendant met up with S.C. and Thomas. Defendant said he had to get rid of a knife because he stabbed a guy. Defendant had blood on his shirt.

The jury found defendant guilty of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1))[2] and found true various enhancement and aggravating circumstance allegations. The trial court sentenced defendant to nine years in state prison.

Additional background is set forth in the discussion as relevant to the contention on appeal.

DISCUSSION

Defendant contends his constitutional right to confront prosecution witnesses was violated by the admission at trial of the absent victim's preliminary hearing testimony, because the People did not show they had used reasonable or due diligence to secure the victim's presence at trial.

A

On May 24, 2023, the trial court held an evidentiary hearing on the efforts made by the People to secure the victim's attendance at trial.

Criminal Investigator Elizabeth Strauss began by describing her efforts to locate the victim and subpoena him to appear at the preliminary hearing. She looked in the Sacramento County Known Persons Finder to see if the victim had any contacts with law

---

[2] Undesignated statutory references are to the Penal Code.

3

enforcement.  She also checked with the victim's probation officer and with Vital Records, along with other county law enforcement databases.  Strauss said she was unable to locate the victim using any of those sources.

Strauss placed the victim's name on the Sacramento County Web Known Persons Finder watch list, which would give her an e-mail alert if local law enforcement had contact with the victim.  Through that method she learned the victim's whereabouts shortly before the preliminary hearing.

When Investigator Strauss met with the victim, she learned he had no physical address, e-mail address, telephone number, or working telephone.  She saw his tent along the railroad tracks.  Investigator Strauss brought the victim to the preliminary hearing, and then took him back to his tent.  There was a subsequent law enforcement "sweep" of the area where the victim had set up his tent.  All the individuals without housing at the location were moved, and although the victim remained on the Known Persons Finder watch list, Investigator Strauss did not know what happened to him after the sweep.

Investigator Strauss continued to search for the victim in an effort to ensure that he would appear at trial.  She learned that some officers had run warrants for the victim and contacted the officers to see if they knew his whereabouts, but they did not.  She noted that the victim had a felony warrant, which meant he would most likely be arrested if contacted by law enforcement.  Strauss contacted the Sacramento Police Department's Impact team to ascertain if they had any contact with the victim, and let them know she was looking for him.  She also contacted the Department of Public Assistance and learned the victim was not receiving any benefits.  The investigator also checked to see if the victim was in custody in California or Nevada and determined he was not.

The victim's probation officer indicated the victim had given his father's address as his contact, but the victim had not been in contact with probation.  At the time, the probation office had last spoken with the victim's father in April, and he had no idea where the victim might be.  Investigator Strauss contacted the victim's father by

4

telephone and text, but he had not seen or heard from the victim. Investigator Strauss was unable to locate any friends of the victim.

On cross-examination, Investigator Strauss stated she repeatedly searched various areas looking for the victim or his tent. She went back to the area that had been involved in the sweep but also to other areas where people had set up camp.

On the day of trial, Investigator Strauss spoke with the victim's probation officer and an investigator from Medi-Cal. She learned from the Medi-Cal investigator, and also from the Department of Human Assistance, that they had a mailbox store address for the victim, but the victim's last contact with that address had been in 2022.

The trial court found that the People had met their burden to show that the victim was unavailable and that they had made reasonable efforts to secure his presence. It further found that during the victim's preliminary hearing testimony, the defense had the interest, motive, and opportunity to cross-examine him.

B

"A criminal defendant has the right, guaranteed by the confrontation clauses of both the federal and state Constitutions, to confront the prosecution's witnesses." (*People v. Herrera* (2010) 49 Cal.4th 613, 620 (*Herrera*).) But the right is not absolute. (*Chambers v. Mississippi* (1973) 410 U.S. 284, 295.) Testimonial statements may be admissible if the declarant is unavailable, and the defendant has had a prior opportunity to cross-examine. (*Crawford v. Washington* (2004) 541 U.S. 36, 59.) "Evidence Code section 1291 codifies this traditional exception. [Citation.] When the requirements of Evidence Code section 1291 are met, 'admitting former testimony in evidence does not violate a defendant's right of confrontation under the federal Constitution. [Citations.]' " (*People v. Wilson* (2005) 36 Cal.4th 309, 340 (*Wilson*).)

"Evidence Code section 1291, subdivision (a)(2), provides that former testimony is not rendered inadmissible as hearsay if the declarant is 'unavailable as a witness,' and '[t]he party against whom the former testimony is offered was a party to the action or

5

proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing.' In turn, Evidence Code section 240, subdivision (a)(5), states a declarant is 'unavailable as a witness' if the declarant is '[a]bsent from the hearing and the proponent of his or her statement has exercised reasonable diligence but has been unable to procure his or her attendance by the court's process.' " (*Wilson, supra*, 36 Cal.4th at p. 341.)

"[T]he prosecution bears the burden of showing that the witness is unavailable and, additionally, that it made a 'good-faith effort' (*Barber v. Page* (1968) 390 U.S. 719, 725) or, equivalently, exercised reasonable or due diligence to obtain the witness's presence at trial. (*People v. Cromer* (2001) 24 Cal.4th 889, 892; see *People v. Valencia* (2008) 43 Cal.4th 268, 291-292 ['California law and federal constitutional requirements are the same in this regard.'].)" (*People v. Sanchez* (2016) 63 Cal.4th 411, 440 (*Sanchez*).) The courts have not divined a mechanical definition for reasonable or due diligence. It " 'connotes persevering application, untiring efforts in good earnest, [and] efforts of a substantial character.' " (*Cromer*, at p. 904.) "[T]o establish unavailability, the prosecution must show that its efforts to locate and produce a witness for trial were reasonable under the circumstances presented." (*Herrera, supra*, 49 Cal.4th at p. 623.)

The totality of efforts of the proponent, in this case the prosecution, to achieve the presence of the witness must be considered by the court. "Prior decisions have taken into consideration not only the character of the proponent's affirmative efforts but such matters as whether [the proponent] reasonably believed prior to trial that the witness would appear willingly and therefore did not subpoena him when he was available (*People v. Banks* (1966) 242 Cal.App.2d 373, 377), whether the search was timely begun, and whether the witness would have been produced if reasonable diligence had been exercised [citation]." (*People v. Linder* (1971) 5 Cal.3d 342, 347.) Other relevant considerations include " 'the importance of the proffered testimony, and whether leads of the witness's possible location were competently explored.' " (*Herrera, supra*, 49 Cal.4th

6

at p. 622.) The prosecution shows due diligence where its efforts are timely, reasonably extensive, and carried out over a reasonable period. (*People v. Bunyard* (2009) 45 Cal.4th 836, 856.) In contrast, diligence is lacking where the prosecution's efforts to locate the witness are "perfunctory or obviously negligent." (*Id.* at p. 855.)

We will defer to the trial court's determination of the historical facts if supported by substantial evidence, but we independently review the trial court's ultimate finding of reasonable or due diligence. (*Sanchez, supra*, 63 Cal.4th at p. 440.)

C

Defendant points to a number of things the People should have done to try and find the victim. But just because additional efforts could have been made does not defeat the trial court's determination of reasonable or due diligence. (*People v. Diaz* (2002) 95 Cal.App.4th 695, 706.) The law requires reasonable efforts to locate the witness, not perfection. (*Ibid.*)

For example, defendant argues the People should have started searching for the victim before April 2023. However, following the preliminary hearing, the People asked the trial court to order the victim back to court on April 3, 2023. The victim responded affirmatively to that order and there is no evidence at that time of any hesitancy by the victim to obey that order. He had cooperated with Investigator Strauss in appearing for the preliminary hearing. We decline to fault the investigator's efforts prior to April 3, 2023.

As for the time period between April 3 and the trial date, the victim had no physical address, no telephone number, no known friends, one family member who did not know his whereabouts, and a broken telephone. Nevertheless, Investigator Strauss checked law enforcement databases and put defendant's name on the Known Persons Finder watch list. The watch list had previously worked in locating him for the February 7, 2023 preliminary hearing.

7

Investigator Strauss also checked hospitals and ascertained the victim was not deceased or in custody. She contacted the Sacramento Police Department Impact Team that had performed the sweep, and also contacted Public Assistance, the victim's probation officer, and the victim's father. Law enforcement and Public Assistance had no information, and his father and the probation officer had not seen the victim for months. The victim had a felony warrant for his arrest but had not been detained.

In addition, the investigator went into the field five or more times between early April and early May. She knew what he looked like and what his tent looked like. She located a mailbox store address for him but it had not been used since 2022.

Defendant argues the People failed to learn where the victim had been relocated after the sweep. But there is no evidence public officials placed the victim at a different location or that they knew where he went. The evidence is that the officers directed the individuals without housing to move and they did so.

Defendant also takes issue with the failure of Investigator Strauss to question other individuals without housing, or local proprietors, about the victim's location. But there was no evidence of possible local proprietors who might have been helpful to the search, and as for other individuals without housing, Investigator Strauss testified they often did not have positive associations with law enforcement and she did not believe questioning them would be helpful.

Defendant further argues the investigator did not look in heavy drug use areas, check hospitals often, or stake out the victim's mailbox store address. But again, the possibility of additional efforts does not defeat the trial court's determination.

The record demonstrates that the People exercised reasonable and due diligence in attempting to locate the victim. Because the victim was unavailable, and because the defense had the prior interest, motive, and opportunity to cross-examine the victim at the preliminary hearing, admission of the victim's preliminary hearing testimony at trial did not violate defendant's constitutional right of confrontation.

8

## DISPOSITION

The judgment is affirmed.

/S/

MAURO, J.

We concur:

/S/

ROBIE, Acting P. J.

/S/

FEINBERG, J.