[No. H006171. Sixth Dist. Jan 24, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
DEWAYNE ANTOINE ROBINSON, Defendant and Appellant.

**COUNSEL**

Shoko Tanida Michael, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Martin S. Kaye and Don Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PREMO, J.**—After a jury trial, defendant Dewayne Antoine Robinson was convicted of battery with serious bodily injury (Pen. Code, §§ 242, 243, subd. (d)),[1] misdemeanor assault (§ 240), assault with a deadly weapon (§ 245, subd. (a)(1)), dissuading a witness from testifying (§ 136.1, subd. (c)), conspiracy to violate section 136.1, subdivision (c) (§ 182), and conspiracy to obstruct justice (§ 182). The trial court sentenced defendant to a total term of seven years and ordered him housed at the California Youth Authority pursuant to Welfare and Institutions Code section 1731.5, subdivision (c).

On appeal, defendant contends (1) the trial court erred in admitting the preliminary hearing testimony of a witness who could not be located for trial; (2) the trial court violated section 654 in imposing a concurrent sentence for the misdemeanor assault; and (3) the abstract of judgment, which indicated a sentence of seven years and eight months, inaccurately reflects the court's intention to impose a total term of seven years. For the reasons stated below we will modify the sentence and otherwise affirm the judgment.

### BACKGROUND

The charges of which defendant was convicted arose from an attack on Daniel Kelley and Mark Johnson, who had been driving together in Kelley's car. When Johnson got out of the car Kelley was hit three or more times in the face and head through the open driver's side window. Kelley managed to escape his assailants and drove home, unaware that Johnson had also been attacked. Kelley was unable to identify any of his assailants.

At the conclusion of Kelley's testimony at trial, the prosecution sought to introduce the preliminary hearing testimony of Johnson, whom the prosecution had been unable to locate. After a hearing out of the presence of the jury, the trial court determined Johnson to be an unavailable witness and, over defendant's objection, permitted the transcript of Johnson's testimony to be read to the jury. In that testimony Johnson described being severely beaten by a group of five to six men, including defendant.

### DISCUSSION

### 1.  *Admission of Preliminary Hearing Testimony*

Under Evidence Code section 1291, a witness's prior testimony may be introduced if he is unavailable as a witness at trial. Unavailability may be

---

[1] Further statutory references are to the Penal Code unless otherwise stated.

established by showing that the witness is "[a]bsent from the hearing and the proponent of his or her statement has exercised reasonable diligence but has been unable to procure his or her attendance by the court's process." (Evid. Code, § 240, subd. (a)(5).) ■ In a criminal case, the prosecution "must make a good faith effort and exercise reasonable diligence to procure the witness's appearance." (*People* v. *Hovey* (1988) 44 Cal.3d 543, 562 [244 Cal.Rptr. 121, 749 P.2d 776].)

In admitting Johnson's preliminary hearing testimony, the trial court found that the prosecution had exercised due diligence in attempting to secure Johnson's attendance at trial. ■ Defendant disagrees, contending the prosecution failed to meet its burden of showing due diligence and therefore should not have been permitted to read the transcript to the jury.

■ As a preliminary matter, the parties dispute the appropriate standard of review. The districts of the Court of Appeal are in conflict over the standard to be applied when evaluating a finding of due diligence in locating a witness. (Compare *People* v. *Watson* (1989) 213 Cal.App.3d 446, 452 [261 Cal.Rptr. 635] [appellate court exercises independent judgment on issue of unavailability], citing *People* v. *Louis* (1986) 42 Cal.3d 969 [232 Cal.Rptr. 110, 728 P.2d 180], with *People* v. *McElroy* (1989) 208 Cal.App.3d 1415, 1426 [256 Cal.Rptr. 853] [abuse of discretion standard still appropriate in light of *People* v. *Hovey, supra,* 44 Cal.3d 543]; *People* v. *Turner* (1990) 219 Cal.App.3d 1207 [268 Cal.Rptr. 686] [agreeing with *McElroy*]; and *People* v. *Wright* (1990) 222 Cal.App.3d 1002, 1006 [272 Cal.Rptr. 219] [agreeing with *McElroy* and *Turner*].) We agree with the reasoning of those courts that continue to adhere to the abuse of discretion standard (see, e.g., *People* v. *McElroy, supra,* 208 Cal.App.3d at pp. 1425-1426), and therefore adopt that standard in reviewing the instant appeal.

■ Defendant first argues a reasonableness showing was not made because no explanation was offered for the three-week delay between the date the subpoena for Johnson was typed and the date Sergeant Sinclair received it. As one court has aptly noted, however, the reasonableness of a delay in issuing a subpoena is a matter properly within the province of the trial court: "The trial court, unlike the appellate court, is conversant with the general congestion of its docket, and with the obstacles which might delay the trial of a particular criminal case. Such 'delay' factors could influence the trial court's decision as to whether the subpoena process for a particular case was 'timely commenced.' However, the cold record which the appellate court would rely upon to conduct an independent review of 'due diligence' would rarely reflect such 'delay' factors and, hence, any appellate evaluation of 'timely commencement' would incorporate a propensity to disregard these practical realities. Additionally, trial courts have

experience with local subpoena practice and procedure: What efforts are customary; are those customary procedures generally successful in securing witnesses' attendance; were there exigencies in a particular case which required more, or which justified less, stringent efforts than normally employed? This familiarity with accepted local procedures will influence a trial court's determination of whether efforts undertaken in a particular case were 'reasonable under the circumstances.' The appellate court, which lacks access to or experience with such practical data, is ill-equipped to account for these factors when independently evaluating whether efforts in a particular case were reasonable." (*People* v. *McElroy, supra,* 208 Cal.App.3d at pp. 1426-1427, fn. 7.)

Defendant further argues that efforts to locate Johnson after the subpoena was issued consisted of but "one desultory attempt" through the subpoena service. The record belies this portrayal of events. At trial on July 18, 1989, Sergeant Sinclair testified that he received a subpoena for Johnson about June 23, 1989. The subpoena had been typed on May 30, 1989. That same day Sinclair forwarded the subpoena, listing the address Johnson had given him at the preliminary hearing, to a private subpoena service agency. The agency returned the subpoena around July 1 with the information that Johnson had not been located. Sinclair immediately notified the district attorney's office and ran a computer check on Johnson's driver's license and arrest records to determine whether any other addresses were associated with him. The day before the hearing on the motion, Sinclair issued a "Be On the Lookout" bulletin for Johnson at the request of the district attorney's office.

Vaughan Edwards of the district attorney's office also testified regarding his own efforts to find Johnson. Beginning July 6, 1989, the day after he was assigned the case, Edwards attempted telephone contact and made personal visits to members of Johnson's family. Edwards made several such visits thereafter on July 10, 11, 12, 13, and 17. In addition, he spent several hours on several occasions surveilling the residence, including July 17, four days after trial had commenced. Edwards also contacted the sheriff's departments in the counties of Santa Cruz, San Mateo, Alameda, and Santa Clara, to ascertain whether Johnson was in custody in any of those counties, and he talked to Kelley and Johnson's girlfriend as well as to individuals in several apartment complexes in different areas of San Jose. When his efforts proved unsuccessful, he requested that Sergeant Sinclair issue the "Be On the Lookout" bulletin. Edwards learned through these efforts that an earlier warrant was outstanding for Johnson's failure to appear in another case.

These activities indicate significantly greater effort than defendant represents the prosecution as making through its subpoena service. Moreover,

"[t]he law requires only reasonable efforts, not prescient perfection." (*People* v. *McElroy, supra,* 208 Cal.App.3d at p. 1428.) We agree with the trial court that although this is "not the best case of due diligence," the prosecution nevertheless made reasonable efforts sufficient to satisfy the requirements of Evidence Code sections 240 and 1291.

### 2. *Showing of Reliability*

■ In order to admit the former testimony of an unavailable witness against a criminal defendant at trial, the defendant must have been given the opportunity in the prior proceeding to cross-examine the witness with an interest and motive similar to that which he has at trial. (Evid. Code, § 1291.) This requirement was satisfied here. Johnson's testimony at the preliminary hearing described his encounter with his attackers and clearly identified defendant as one of those who had beaten him. Defense counsel thoroughly cross-examined the witness regarding his identification of defendant as well as his perception of the events that occurred that day. We see no abuse of discretion in admitting the preliminary hearing testimony at trial.

### 3. *Sentencing Error*

Believing counts 1 and 2 involved different victims, the trial court imposed the midterm of three years on count 1, battery with serious bodily injury on Mark Johnson, and a concurrent term of sixty days in county jail on count 2, misdemeanor assault on Mark Johnson. The People concede that the imposition of the two sentences violated section 654, and therefore request a stay of execution of the sentence in count 2.

■ The People further join defendant in requesting modification of the abstract of judgment, which inaccurately states that the eight-month term on count 6 (conspiracy to obstruct justice) was ordered to run consecutive to the terms on the remaining counts. The transcript of the sentencing hearing in fact discloses that the trial court stayed the sentence on this count, thereby imposing a total term of seven years. The abstract of judgment must therefore be amended to reflect the term actually imposed by the trial court.

### DISPOSITION

The judgment is modified to stay execution of the 60-day jail term imposed for the conviction on count 2. The trial court shall prepare an amended abstract of judgment which reflects said modification and which reflects the trial court's stay of the eight-month sentence on count 6. The trial court

is further directed to forward a certified copy of the amended abstract of judgment to the appropriate authorities. As so modified, the judgment is affirmed.

Agliano, P. J., and Cottle, J., concurred.

A petition for a rehearing was denied February 21, 1991, and appellant's petition for review by the Supreme Court was denied April 10, 1991.