33 Cal.App.4th 1230 (1995)
40 Cal. Rptr.2d 153
THE PEOPLE, Plaintiff and Respondent,
v.
ISIDRO SAUCEDO, Defendant and Appellant.
Docket No. B074079.
Court of Appeals of California, Second District, Division Seven.
April 5, 1995.
*1232 COUNSEL
Jonathan P. Milberg, under appointment by the Court of Appeal, for Defendant and Appellant.
Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Roy C. Preminger and Robert M. Snider, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
WOODS (Fred), J.
A jury convicted appellant of second degree murder (Pen. Code,[1] § 187) and found true a personal use of a firearm allegation (§ 12022.5, subd. (a)). Appellant was sentenced to state prison for 20 years to life.
Appellant contends (1) it was error to admit the preliminary hearing testimony of Gwendolyn Davidson because the prosecution failed to exercise reasonable diligence to procure her attendance at trial (Evid. Code, § 240), (2) the trial court erroneously denied his section 1538.5 motion, and (3) the trial court improperly admitted "gang" evidence. We find no error and affirm the judgment.

FACTUAL BACKGROUND
There being no insufficiency of evidence claim, the facts may be stated simply. Our perspective favors the judgment. (People v. Barnes (1986) 42 Cal.3d 284, 303-304 [228 Cal. Rptr. 228, 721 P.2d 110].)
*1233 On the night of September 6, 1991, Matt Cruz (the victim) and his cousin Richard Calderon went to visit Gwendolyn Davidson and others at Ms. Davidson's boyfriend's house on Savannah Street in Los Angeles. When Cruz and Calderon arrived they were accosted by a group of about seven young men who asked them where they were from and what they wanted. An altercation was avoided and Cruz and Calderon entered the Davidson residence.
Later Cruz and Calderon went outside to get beer from Calderon's car. Calderon noticed a pickup truck had arrived with a few more young men. Appellant emerged from behind the pickup, fired three or four shots in the air from a handgun, approached Cruz and Calderon and said, "Where you F'ing dudes from?" Appellant pointed the gun at Cruz and Calderon and kept pulling the trigger  as they tried to dodge out of the way  but it was "either jacked, nothing coming out, or if he fired his last one."
Appellant went back to the pickup truck while others in his group kept Cruz and Calderon from leaving.
Ms. Davidson heard the noise, opened her back door and saw appellant, whom she knew as "Capone," sitting in a chair in her backyard. She had often seen him there drinking, shooting guns in the air, and forcing her friends away.
When appellant jumped up from his chair Ms. Davidson ran to the front door, opened it, and saw appellant with a double-barreled, sawed-off shotgun. Calderon, now on the porch of the Davidson house, yelled to his cousin to get in the house but Cruz remained outside. Calderon saw appellant walk around the side of the house carrying a shotgun. Ms. Davidson yelled at the top of her voice, "Capone, please don't kill him because that's our friend."
Appellant approached to within about 35 feet of Cruz and both Calderon and Ms. Davidson ran into the house. They heard three or four gunshots. It was about 11:35 p.m.
Later, the police arrived and found Cruz dead from multiple shotgun wounds.
Within two weeks of the murder both Ms. Davidson and Calderon identified appellant, by photograph, as the person who had murdered Cruz.

*1234 DISCUSSION

1. Appellant contends it was error to admit the preliminary hearing testimony of Gwendolyn Davidson because the prosecution failed to exercise reasonable diligence to procure her attendance at trial.

(1a) The trial court admitted the preliminary hearing testimony of eyewitness Gwendolyn Davidson because she was unavailable (Evid. Code, § 1291) and the People had "exercised reasonable diligence" in trying to procure her trial attendance. (Evid. Code, § 240, subd. (a)(5).) Appellant contends the trial court erred.

a. Standard of review.

(2a) In 1904 our Supreme Court stated due diligence was a question addressed to the discretion of the trial court and an appellate court would not "interfere" in the determination unless that discretion had been abused. (People v. Lewandowski (1904) 143 Cal. 574, 576 [77 P. 467].)
This rule, abuse of discretion  substantial evidence, became the settled standard of review for due diligence. (People v. Cavazos (1944) 25 Cal.2d 198, 200-201 [153 P.2d 177]; People v. Enriquez (1977) 19 Cal.3d 221, 235 [137 Cal. Rptr. 171, 561 P.2d 261, 3 A.L.R.4th 73]; People v. Jackson (1980) 28 Cal.3d 264, 311-312 [168 Cal. Rptr. 603, 618 P.2d 149]; People v. McDonald (1944) 66 Cal. App.2d 504, 509 [152 P.2d 448]; People v. Horn (1964) 225 Cal. App.2d 1, 5 [36 Cal. Rptr. 898]; People v. Peters (1969) 276 Cal. App.2d 71, 78 [80 Cal. Rptr. 648]; People v. Benjamin (1970) 3 Cal. App.3d 687, 698 [83 Cal. Rptr. 764]; People v. Rodriguez (1971) 18 Cal. App.3d 793, 797 [96 Cal. Rptr. 162]; People v. Smith (1971) 22 Cal. App.3d 25, 32 [99 Cal. Rptr. 171]; People v. Ventura (1985) 174 Cal. App.3d 784, 793 [220 Cal. Rptr. 269] [Second Dist., Div. Seven].)
Then in 1986 Justice Mosk (with Justices Bird, Broussard, and Reynoso concurring) stated, "it appears ... due diligence ... is subject to independent review.... [but] we need not resolve the issue. ..." (People v. Louis (1986) 42 Cal.3d 969, 988-989 [232 Cal. Rptr. 110, 728 P.2d 180], italics added.) Justices Panelli and Lucas, in dissent, were unpersuaded "we should abandon or depart from our settled and long established standard of review...." (Id. at p. 998.) Justice Grodin, concurring and dissenting, hedged. He was "more persuaded than Justice Panelli [who was not persuaded at all] that there may be merit in the majority's suggestion that ... `due diligence' is a question to be decided de novo by the appellate court." (Id. at p. 995, italics added.) Justice Grodin was apparently less persuaded than Justice Mosk.
*1235 Two years later, when the Supreme Court revisited Justice Mosk's dictum "suggestion," Chief Justice Lucas wrote: "We have held that the question of due diligence is a factual one depending on the circumstances in each case, and that the trial court's determination of the issue will not be disturbed in the absence of a showing of an abuse of discretion (People v. Enriquez (1977) 19 Cal.3d 221, 235 [137 Cal. Rptr. 171, 561 P.2d 261 3 A.L.R.4th 73]; see People v. Jackson, supra, 28 Cal.3d at pp. 311-312.) In People v. Louis (1986) 42 Cal.3d 969, 984-989 [232 Cal. Rptr. 110, 728 P.2d 180], we suggested (but did not decide) that an appellate court should independently review the record on the due diligence issue." (People v. Hovey (1988) 44 Cal.3d 543, 563 [244 Cal. Rptr. 121, 749 P.2d 776], italics added.) Hovey also stated the trial court's due diligence finding was "supported by substantial evidence." (Id. at p. 562.)
Hovey's evisceration of the Louis dictum-suggestion was noted by the next Court of Appeal to consider the issue which stated: "We conclude, based on subsequent pronouncements of the California Supreme Court and a careful review of Louis, the traditional standard of review (i.e., `abuse of discretion') remains the governing standard of review." (People v. McElroy (1989) 208 Cal. App.3d 1415, 1425 [256 Cal. Rptr. 853] [Fourth Dist., Div. One].)
Since Hovey and McElroy, every Court of Appeal, except one, which has taken a position,[2] has concluded that the appropriate "reasonable diligence" review standard is abuse of discretion, not independent review. (People v. Turner (1990) 219 Cal. App.3d 1207, 1214 [268 Cal. Rptr. 686] [Second Dist., Div. One]; People v. Wright (1990) 222 Cal. App.3d 1002, 1004, 1006-1007 [272 Cal. Rptr. 219] [Fifth Dist.]; People v. Guiterrez (1991) 232 Cal. App.3d 1624, 1641 [284 Cal. Rptr. 230] [First Dist., Div. Two]; People v. Robinson (1991) 226 Cal. App.3d 1581, 1585 [277 Cal. Rptr. 504] [Sixth Dist.].)
The one is People v. Watson (1989) 213 Cal. App.3d 446 [261 Cal. Rptr. 635] (Second Dist., Div. Six). Although Watson was decided after both Hovey and McElroy it failed to cite either. And although Louis's reference to an independent review standard for due diligence was merely a dictum-suggestion, this nuance apparently escaped Watson. The reference to a due diligence review standard in Watson entirely consists of the following sentence: "In reviewing the trial court's determination of the unavailability of a witness, the appellate court exercises its independent judgment. (People v. Louis, supra, 42 Cal.3d at pp. 984-988.)" (Id. at p. 452.)
As Justice Ortega observed, "We agree with People v. McElroy (1989) 208 Cal. App.3d 1415 [256 Cal. Rptr. 853] which, after a lengthy analysis of *1236 the Louis dicta and Hovey clarification (id. at pp. 1425-1426), concluded that `the most recent Supreme Court guidance on this issue both reaffirmed the vitality of prior cases applying the "`abuse of discretion'" standard, and cautioned that any contrary analysis or suggestions in People v. Louis, supra, 42 Cal.3d 969 were dicta. We adhere to the Supreme Court's guidance, and therefore apply the abuse of discretion standard to this case.' (Id. at p. 1426.) Even were we free to endorse either rule, we would on policy grounds adopt the abuse of discretion standard for review of such rulings." (People v. Turner, supra, 219 Cal. App.3d 1207, 1214.) For these same reasons, we apply the abuse of discretion review standard.[3]

b. Reasonable diligence.

(1b) Appellant does not fault the prosecution for what it did in trying to locate and procure the attendance of Ms. Davidson. Appellant characterizes the effort as a "flurry of activity." It is when the prosecution made its effort to locate Ms. Davidson that appellant faults. Accordingly, we consider whether or not the trial court abused it discretion in determining the prosecution began its search for Ms. Davidson at a reasonable time.
The trial court presided over this case from its March 26, 1992, arraignment through its September 1992 trial. It was intimately familiar with its own calendar, local subpoena custom and efficacy, the trial commitments and proclivities of counsel, the practicality or impracticality of witness surveillance, available law enforcement resources, the frequency or infrequency of fearful witnesses, and the significance of the pending suppression motion.
The trial court was entitled to consider that on August 24, 1992, eight days before trial, the originally assigned prosecutor caused subpoenas to be generated; that on August 25, 1992, a secretary sent those subpoenas to Detective Martinez; that receipt of the subpoenas was slightly delayed because Detective Martinez had recently changed his address; that on September 1, 1992, the suppression motion was denied; that on September 1, 1992, a search for Gwendolyn Davidson began; and that the search for her diligently continued until September 8, 1992, when her preliminary hearing testimony was offered and received into evidence.
As noted in People v. Forgason (1979) 99 Cal. App.3d 356, 363 [160 Cal. Rptr. 263]: "It is commonly known that trial dates in criminal cases are *1237 often tentative, with little likelihood that the trial will then commence. Competent and experienced trial lawyers will keep in touch on such matters with their prosecutorial adversary, and the court and its attaches, and plan accordingly. Here, for instance, trial dates were set, and reset, six times over a six-month period before Forgason's case finally came on for trial."
In the instant case, the trial date was tentative due to the pendency of a suppression motion. (§ 1538.5.) The hearing on the motion began June 26, 1992, but did not conclude until September 1, 1992, when it was denied. The trial began that same day.
It was the pendency of this suppression motion "that changes the situation," the trial court stated. "This was a serious motion, and it had to be resolved pre-trial...." Normally, potentially dispositive pretrial motions are heard well before trial. But in this case the ruling was delayed until the trial date. It was this belated ruling which made uncertain the trial date. Had the motion been granted the People had 10 days in which to file a notice of intention to file a petition for a writ of mandate or prohibition. (§ 1538.5, subd. (o).) Had such a notice been filed the trial would have been continued. Had a writ petition been filed the continuance might have been protracted.
As Justice Froehlich wisely observed: "A determination of the reasonableness of efforts to procure attendance of a witness at trial cannot be assessed by reference to rigid rules of law; it depends upon analysis of practical human experience and contemporary community standards. For instance, an element to be evaluated is whether the search for the witness was `timely begun.' [Citation.] The trial court, unlike the appellate court, is conversant with the general congestion of its docket, and with the obstacles which might delay the trial of a particular criminal case. Such `delay' factors could influence the trial court's decision as to whether the subpoena process for a particular case was `timely commenced.' However, the cold record which the appellate court would rely upon to conduct an independent review of `due diligence' would rarely reflect such `delay' factors and, hence, any appellate evaluation of `timely commencement' would incorporate a propensity to disregard these practical realities. Additionally, trial courts have experience with local subpoena practice and procedure: what efforts are customary; are those customary procedures generally successful in securing witnesses' attendance; and were there exigencies in a particular case which required more, or which justified less, stringent efforts than normally employed? This familiarity with accepted local procedures will influence a trial court's determination of whether efforts undertaken in a particular case were `reasonable under the circumstances.' The appellate court, which lacks access to or experience with such practical data, is ill-equipped to account *1238 for these factors when independently evaluating whether efforts in a particular case were reasonable.
(2b) "The deferential `abuse of discretion' standard properly assigns the trial court, with its reservoir of practical knowledge, the responsibility to evaluate the efforts in light of the circumstances and realities confronting prosecutors and law enforcement agencies." (People v. McElroy, supra, 208 Cal. App.3d 1415, 1426-1427, fn. 7.)
(1c) Although a witness search was begun shortly before or during trial, the following cases have upheld a trial court's finding of reasonable diligence.
In People v. Smith, supra, 22 Cal. App.3d 25 the first effort to procure a witness was made a week before trial. It consisted of sending a subpoena to authorities in San Francisco who might serve the witness at his Red Bluff address. The remainder of the effort was this: "The day prior to trial, teletypes had been sent to San Francisco to ascertain whether service had been effected. Efforts were made to locate [the witness] at his Red Bluff address and three telephone calls were made to San Francisco." (Id. at p. 32.) The reasonable diligence finding was upheld.
In People v. Rodriguez, supra, 18 Cal. App.3d 793 a district attorney investigator began trying to locate the witness on May 20, six days before the May 26 trial. The reasonable diligence finding was upheld.
In People v. Benjamin, supra, 3 Cal. App.3d 687, 697 the search began four days before trial. The court stated, "Here, although the People first knew on July 5 that the trial was set for July 29, they did not attempt to locate Guthrie until July 31, about four days before August 5, the date to which the trial had been postponed." The reasonable diligence finding was upheld.
In People v. Linder (1971) 5 Cal.3d 342 [96 Cal. Rptr. 26, 486 P.2d 1226], one day before trial, the defendant gave a deputy sheriff a subpoena for his former wife. The deputy sheriff could not effect service. Defendant's attorney also attempted to have "a detective somebody" try to locate her, to no avail. (Id. at p. 346.) Defendant's attorney also telephoned relatives of the witness, also to no avail. The trial court excluded the former wife's preliminary hearing testimony because reasonable diligence had not been established. Linder disagreed and reversed the judgment.
In People v. Hovey, supra, 44 Cal.3d 543 the search for defendant's former cellmate (Lee) almost certainly began after the trial had begun. Being *1239 a death penalty case begun in September 1981, counsel would have spent at least two weeks, probably much longer, selecting a jury. Next would have come opening statements, in limine motions, and other inevitable time-consuming matters. Further, from the court's factual description it appears that the prosecution called at least 10 witnesses before seeking to introduce Lee's preliminary hearing testimony (a detailed confession by defendant). As to when the prosecution began its search for Lee, Hovey only and carefully states: "More than one month before Lee's trial testimony was needed, investigators from the district attorney's office attempted to locate him." (Id. at p. 562, italics added.) The delay in starting the search for Lee is especially significant because two and one-half years had elapsed since Lee testified at the preliminary hearing. Yet Hovey upheld the trial court's reasonable diligence finding.
In our view, the trial court did not abuse its discretion in finding reasonable diligence had been exercised to procure the attendance of Gwendolyn Davidson. (See People v. Wise, supra, 25 Cal. App.4th 339, 344; People v. Robinson, supra, 226 Cal. App.3d 1581, 1585-1587.)

2. Appellant contends the trial court erroneously denied his suppression motion (§ 1538.5).

(3) Appellant moved to suppress the identification testimony of Richard Calderon and Ms. Davidson as the product of his illegal detention.
On September 12, 1991, six days after the murder, Officer Borunda arrested appellant on suspicion he had an outstanding traffic warrant. Appellant was transported to the police station where, upon further checking, Officer Borunda determined the traffic warrant was not for appellant. Officer Borunda took a photograph of appellant and that photograph (among a group of other photographs) was shown to and identified by Richard Calderon and Ms. Davidson.
On August 31, 1992, when the trial court was shown a traffic warrant for a person similar to appellant, the trial court determined Officer Borunda had a reasonable, good faith belief that there had been an outstanding traffic warrant for appellant. The trial court denied the suppression motion.
We apply the following standard of review and uphold the trial court's ruling: "A proceeding under section 1538.5 to suppress evidence is a full hearing on the issues before the superior court sitting as finder of fact. [Citations.] The power to judge credibility of witnesses, resolve conflicts in testimony, weigh evidence and draw factual inferences, is vested in the trial *1240 court. On appeal all presumptions favor proper exercise of that power, and the trial court's findings  whether express or implied  must be upheld if supported by substantial evidence." (People v. Superior Court (Keithley) (1975) 13 Cal.3d 406, 410 [118 Cal. Rptr. 617, 530 P.2d 585].) Our review is confined to the correctness or incorrectness of the trial court's ruling, not the reasons for its ruling. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 260, p. 267; see also Philip Chang & Sons Associates v. LaCasa Novato (1986) 177 Cal. App.3d 159, 173 [222 Cal. Rptr. 800].)

3. Appellant contends the trial court improperly admitted "gang" evidence.

As appellant accurately notes, "during the course of the trial, evidence was elicited that appellant Saucedo had a nickname of `Capone' and that he was a member of the M.C. Force Gang."
(4) Appellant contends the trial court erred in admitting this evidence, when defense counsel objected, and defense counsel was ineffective when he did not object to this evidence. We disagree.
As the trial court stated:
"Look how this crime occurred. It is a gang-related case, however you want to call it. The classic, `Where are you from?' It appears from the fact that this victim was killed because he was in somebody else's territory, that he was not wanted there, and that a gang of people  the People's evidence show not just Mr. Saucedo, but there was a group of people acting in concert with him were attempting to attack and physically  and did physically assault in a rat-pack fashion the victim in this case. And then Mr. Saucedo finished the effort with a shotgun according to the People's evidence.
"Now, that is a classic  that's gang activity. So the matter is gang related."
The trial court properly admitted "gang" evidence. (People v. Tuilaepa (1992) 4 Cal.4th 569, 588 [15 Cal. Rptr.2d 382, 842 P.2d 1142] ["... nothing bars evidence of gang affiliation that is directly relevant to a material issue."].)

*1241 DISPOSITION
The judgment is affirmed.
Lillie, P.J., concurred. Johnson, J., concurred in the judgment only.
Appellant's petition for review by the Supreme Court was denied June 28, 1995.
NOTES
[1] Statutory references, unless otherwise noted, are to the Penal Code.
[2] People v. Wise (1994) 25 Cal. App.4th 339 [30 Cal. Rptr.2d 413] (First Dist., Div. One) took no position and found reasonable diligence under both.
[3] In its two most recent decisions the Supreme Court has left undisturbed the vitality of prior cases applying the abuse of discretion standard but declined "to decide the standard of review." (People v. Price (1991) 1 Cal.4th 324, 424 [3 Cal. Rptr.2d 106, 821 P.2d 610]; People v. Cummings (1993) 4 Cal.4th 1233, 1296 [18 Cal. Rptr.2d 796, 850 P.2d 1].)