Filed 7/30/13  P. v. Regalado CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>    v.<br><br>CHRISTOPHER REGALADO,<br><br>  Defendant and Appellant. | F064459<br><br>(Super. Ct. No. SF016310)<br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  John S. Somers, Judge.

Gregory H. Mitts, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and John G. McLean, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Cornell, Acting P.J., Kane, J. and Detjen, J.

A jury convicted appellant, Christopher Regalado, of burglary (count III/Pen. Code, § 460, subd. (a))[1] and two counts of robbery (counts I & II/§ 212.5, subd. (a)) and found true a personal use of a weapon enhancement (§ 12022, subd. (b)(1)) in count I.

On February 22, 2012, the court sentenced Regalado to an aggregate term of six years four months: the middle term of four years on count I, a one-year weapon enhancement in that count; a consecutive 16-month term (one third the middle term) on count II; and a stayed term on count III.

On appeal, Regalado contends the trial court erred when it allowed the prosecution to introduce one victim's preliminary hearing testimony. We affirm.

## FACTS

### *The Preliminary Hearing*

On August 8, 2012, Guillermo Canseco Damian testified at Regalado's preliminary hearing. According to Damian's testimony, on July 21, 2011, at approximately 2:30 a.m., Damian, his nephew Arturo Garcia and another nephew were sleeping on couches in the living room of a house at 1310 Sycamore Drive in Wasco when Damian awoke to find Regalado holding a kitchen knife to his throat. Regalado demanded money and reached into Damian's pocket. Regalado then put the knife to Garcia's throat and took money from him. Regalado also took a box of gloves from the residence before leaving. Regalado wore a red bandana covering his face, a black and white striped shirt, and blue or gray pants during the robbery. However, at one point Garcia grabbed the bandana and pulled it down, allowing Damian to see Regalado's face.

Kern County Sheriff's Deputy Juan Maldonado testified he was dispatched to Damian's house in response to the robbery. Maldonado found Regalado walking on the street approximately 150 to 200 yards away from Damian's residence and approximately

---

[1]     All further statutory references are to the Penal Code.

100 yards from Regalado's residence. A box of latex gloves was in the roadway next to Regalado. A trail of gloves led the officer to a red bandana that had been tied in the back.

Regalado was arrested after Damian was brought to the scene and identified him as the robber. Regalado was wearing a baby blue jersey and white shorts at the time.

Deputy Steve Vasquez testified that during a search of Regalado's bedroom, sheriff's deputies found a pair of pants and a shirt that Damian identified as having been worn by the robber and a knife that Damian identified as the knife used during the robbery.

### The Motion to Admit Damian's Testimony

On August 18, 2011, Regalado was arraigned on the information in this matter and the case was set for jury trial on October 11, 2011.

On September 6, 2011, the district attorney issued a subpoena for Damian.

By October 11, 2011, Damian had not been served with the subpoena and he did not show up in court on that date. The prosecution asked for more time to locate Damian and the trial was trailed to the following day.

On the morning of October 12, 2011, after the case was assigned for jury trial, the prosecutor advised the court he was not ready to proceed. The court trailed the matter until the afternoon and it authorized the prosecutor to file a motion to admit Damian's preliminary hearing testimony.

That afternoon, at a hearing on the motion, District Attorney Investigator Hector Avila testified that at 11:00 a.m. on October 11, 2011, he was assigned to locate Damian. Avila went to several addresses in Wasco, including Damian's last known address at 1938 Fourth Street, where he knocked on the door, but got not answer. He then spoke with a woman who lived in a residence in the backyard of the same location. The woman told Avila she collected the rent for that address and that Damian had moved to Mexico approximately one and a half months earlier. Avila also went to 1900 Fourth Street and

spoke with a Hispanic woman who lived there. The woman stated she was not familiar with Damian.

Avila attempted to contact the other witnesses in the case but was not able to locate them either. He looked for Arturo Garcia at 1310 Sycamore Drive, but got no answer. He went to 763 Oak Street looking for Myra Carranza, but found only her mother there. Myra's mother told Avila she was not familiar with Damian but believed her daughter was friendly with him. Avila's investigation did not uncover any signs that Damian was in Wasco.

District Attorney Investigative Assistant Diana Kadel testified that at 9:00 a.m. on October 12, 2011, she was assigned to locate Damian. Kadel first checked the CJIS[2] computer system to see what subpoenas had been sent out and what had been done with the subpoenas. It appeared from the CJIS check that Damian's two last names might have been reversed so Kadel ran the name both ways and found an active warrant for a Guillermo Conseco that had been issued on September 9, 2011, out of the Taft Court. The warrant listed Conseco's address as 1900 Fourth Street in Wasco but had a different birth date than the one Kadel had been provided for Damian.

Kadel then went through a "due diligence" checklist compiled by the district attorney's office and checked CLETS for Department of Motor Vehicles records and CLEAR.[3] Kadel looked through a Haines Directory and did a reverse directory search, which is a search that allows the searcher to find addresses and telephone numbers for someone by using a name or address. She also had various contacts search Bakersfield Police Department records, Kern County Probation Department records, state parole records and welfare benefit records. Kadel called several local hospitals, the coroner's

---

**2** CJIS is a computer system that contains information from the district attorney's office and the superior court including warrants, arrests, and court dates.

**3** Kadel described CLEAR as a database monitored by the Department of Justice, which provides a variety of information on a person, including credit information and personal information such as cell phone records and children's names.

office, the post office, the Kern County Housing Authority, the Bakersfield Rescue Mission,[4] and a former employer of Damian. On the internet, she searched the Kern County Recorder's office, the Kern County Assessor's office, the Kern County Family Court Services divorce index, and she did a Google search for Damian and searched for him on Facebook and MySpace. Kadel, however, was unsuccessful in locating Damian.

After hearing argument, the court granted the prosecutor's motion to admit Damian's preliminary hearing testimony during the trial.

## DISCUSSION

"A criminal defendant has the right under both the federal and state Constitutions to confront the witnesses against him." (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) This right, however, is not absolute. The high court recently reaffirmed the long-standing exception that "'[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.' [Citations.] Evidence Code section 1291 codifies this traditional exception. [Citation.] When the requirements of Evidence Code section 1291 are met, 'admitting former testimony in evidence does not violate a defendant's right of confrontation under the federal Constitution. [Citations.]' [Citation.] [¶] Evidence Code section 1291, subdivision (a)(2), provides that former testimony is not rendered inadmissible as hearsay if the declarant is 'unavailable as a witness,' and '[t]he party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing.' In turn, Evidence Code section 240, subdivision (a)(5), states a declarant is 'unavailable as a witness' if the declarant is '[a]bsent from the hearing and the proponent of his or her statement has exercised reasonable diligence but has been unable to procure

---

[4] Kadel was told that a Guillermo Conseco had signed in the previous night. Kadel and an investigator went to the mission but were unable to locate the man.

his or her attendance by the court's process.'" (*People v. Wilson* (2005) 36 Cal.4th 309, 340-341 (*Wilson*).)

"The term 'reasonable diligence' or 'due diligence' under Evidence Code section 240, subdivision (a)(5) "'connotes persevering application, untiring efforts in good earnest, efforts of a substantial character. [Citations.]'" (*People v. Cromer* [(2001)] 24 Cal.4th [889,] 904 … [reasonable diligence same as due diligence].) Considerations relevant to this inquiry include the timeliness of the search, the importance of the proffered testimony, and whether leads of the witness's possible location were competently explored. [Citation.] We independently review a trial court's due diligence determination. [Citation.]" (*Wilson*, *supra*, 36 Cal. 4th at p. 341.)

Here, although the search for Damian was not begun until October 11, 2011, Damian had appeared at the preliminary hearing and the People had no reason to believe that they would not be able to contact him for the trial. Further, once the People became aware that there might be a problem procuring Damian's attendance at trial, Investigator Avila searched for him at various locations in Wasco. The People also had Investigative Assistant Kadel conduct an exhaustive search for information on Damian that included searching various computer databases, contacting various public and private entities, and searching the internet. Thus the record supports the trial court's conclusion that the People, as the proponent of admitting Damian's testimony, met their burden (*People v. Smith* (2003) 30 Cal.4th 581, 609) of showing that they exercised due diligence in attempting to procure Damian's attendance at the trial.

Regalado contends the People did not exercise due diligence because no effort to secure Damian's attendance at the trial was made until October 11, 2011, when the case was called for trial. Thus, according to Regalado, the court erred when it allowed the prosecutor to introduce Damian's preliminary hearing testimony. We disagree.

Courts have frequently found due diligence even when a search was begun shortly before the trial began. (*People v. Saucedo* (1995) 33 Cal.App.4th 1230, 1238-1239

6

[reasonable diligence found even though search for witness began on same day as trial]; *People v. Smith* (1971) 22 Cal.App.3d 25, 32, [reasonable diligence found where effort to locate witness began the day before trial]; *People v. Linder* (1971) 5 Cal.3d 342, 346 [appellate court reversed trial court's finding that reasonable diligence not exercised where attempt to subpoena witness began day before trial].)

Further, "'[t]he prosecution is not required "to keep 'periodic tabs' on every material witness[ ] in a criminal case … ." [Citation.]'" (*People v. Martinez* (2007) 154 Cal.App.4th 314, 328.) The prosecution is also "'not required, absent knowledge of a "substantial risk that [an] important witness would flee," to "take adequate preventative measures" to stop the witness from disappearing. [Citation.]' [Citation.]" (*Ibid.*) As noted above, Damian appeared at the preliminary hearing two months earlier and the prosecutor had no reason to believe he would not willingly appear at trial and that there was a need to subpoena him. Moreover, one relevant factor in our inquiry is whether the witness would have been produced if reasonable diligence had been exercised. (*People v. Sanders* (1995) 11 Cal.4th 475, 523.) Given the prosecutor's exhaustive attempts to locate Damian that seems unlikely here. Accordingly, for all these reasons we conclude that the court did not err when it allowed the prosecutor to introduce Damian's preliminary hearing testimony at Regalado's trial.

## DISPOSTION

The judgment is affirmed.